**In re Barry LENOIR, Respondent, A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 90–672.**

District of Columbia Court of Appeals.

Submitted Dec. 17, 1990.
Decided Jan. 17, 1991.

Before ROGERS, Chief Judge, FERREN and BELSON, Associate Judges.

PER CURIAM:

This matter is before us for our consideration of the Report and Recommendation of the Board on Professional Responsibility concerning respondent Barry Lenoir. Lenoir has not contested the Board's recommendation to this court that he be suspended from practice for eighteen months and

required to show fitness for practice before reinstatement.

 The Board found that Lenoir violated seven separate disciplinary rules involving three different clients, Mrs. Alberta Pryor, Ms. Sarah Holley, and Mr. Maryland Banner: DR 6–101(A)(3) (neglect) (Pryor, Holley, Banner); DR 9–103(B)(2) (failure to secure client's property) (Pryor); DR 1–102(A)(4) (dishonesty) (Holley, Banner); DR 7–101(A)(1) (intentional failure to pursue a client's objectives) (Holley); DR 7–101(A)(2) (intentional failure to carry out a contract of employment) (Holley); DR 1–102(A)(5) (conduct prejudicial to the administration of justice by failing to cooperate with Bar Counsel) (Holley, Banner); and DR 7–102(A)(5) (knowingly making a false statement) (Banner).[1] The Board recommends that Lenoir be suspended from the practice of law for a period of eighteen months and that prior to reinstatement he prove fitness to practice. We accept and adopt the Board's report and recommendation, which we append to this opinion.

 We have reviewed the Board's findings of fact and conclude that they are supported by substantial evidence of record. D.C. Bar R. XI, § 9(g); *see also In re Buckley*, 535 A.2d 863, 865–66 (D.C. 1987); *In re Alexander*, 466 A.2d 447, 448 (D.C.1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1680, 80 L.Ed.2d 154 (1984). In imposing discipline, this court makes the ultimate determination of sanction but gives considerable deference to the Board's recommendation. *In re Hutchinson*, 534 A.2d 919, 924 (D.C.1987) (en banc). Thus, we must assess Lenoir's violations in light of the following relevant factors: the nature of the violation, aggravating and mitigating circumstances, the absence or presence of prior disciplinary sanctions, the moral fitness of the attorney, and the need to protect the legal profession, the courts, and the public. *Id.* at 924 (citing *In re Haupt*, 422 A.2d 768, 771 (D.C.1980) (*Haupt I*) and *In re Smith*, 403 A.2d 296, 303 (D.C.1979)).

 In this instance, Lenoir's misconduct is serious, arising from two intentional violations and repeated dishonesty while representing Sarah Holley and Maryland Banner. *See In re Knox*, 441 A.2d 265, 268 (D.C.1982). Although Lenoir does not have a prior record for disciplinary violations, his misconduct during a four year period severely prejudiced his three clients and caused them great inconvenience. We point out in particular the nonadjudication

1. The Board has recommended dismissal of several other charges initially brought against Lenoir. Lenoir was also charged with violating DR 1–102(A)(5) (conduct prejudicial to the administration of justice) and DR 1–102(A)(4) (deceit and misrepresentation), arising from his representation of Mrs. Bridget Crawford. The Board, however, recommends that these two charges be dismissed due to a lack of clear and convincing proof. We agree with the Board's recommendation as to these two charges.

We also agree with the Board that one charge arising from Lenoir's representation of Sarah Holley should be dismissed, DR 7–102(A)(3) (knowingly advancing a claim unwarranted under existing law). We agree with the Board's conclusion that the evidence does not sufficiently show that Lenoir's filing of Holley's claim four months past the statute of limitations period was unwarranted.

With respect to Lenoir's representation of Alberta Pryor, we agree with the Board that the charged violations of DR 7–101(A)(1) (intentional failure to pursue a client's objectives) and DR 7–101(A)(2) (intentional failure to carry out a contract of employment) be dismissed for lack of clear and convincing evidence. We also agree that the charged violation of DR 2–110(A)(2) (prohibits lawyer from withdrawing from employment without taking steps to avoid foreseeable prejudice to client) be dismissed. Because this charge was never pursued by Bar Counsel in post-hearing briefs, the Board assumed that Bar Counsel could not prove this violation by clear and convincing evidence. Noting that Bar Counsel did not file a brief with this court contesting the Board's assumption, we find it reasonable and dismiss this charge.

Finally, we adopt the Board's recommended dismissal of the following charges resulting from Lenoir's representation of Maryland Banner in a civil litigation matter: DR 6–101(A)(3) (neglect); DR 7–101(A)(1) (intentional failure to pursue a client's objectives); and DR 7–101(A)(2) (intentional failure to fulfill a contract of employment). We also adopt the Board's dismissal of four charges involving the same client but for an administrative discrimination matter, namely DR 2–110(A)(2), (A)(3) (withdrawal from employment without returning to client papers and unearned portion of fee); DR 7–101(A)(3) (failure to keep client informed of developments and failure to return requested papers); and DR 9–103(B)(4) (failure promptly to deliver a client's property).

of Sarah Holley's claim because Lenoir allowed the statute of limitations period to expire and the ineffective representation of Maryland Banner. Lenoir's conduct is further aggravated by his lack of remorse and the number of violations he committed. Accordingly, we adopt the Board's recommended sanction, finding it to be consistent with discipline imposed in other cases for comparable conduct. *In re Alexander*, 496 A.2d 244, 246–47 (D.C.1985) (*Alexander I*) (respondent suspended for two years for five instances of conduct prejudicial to the administration of justice, one instance of deceit and misrepresentation, three instances of neglect, two instances of failure to obtain a client's lawful objective, and for misstating to court opposing counsel's position regarding continuance); *In re Bond*, No. 84–1774 (March 25, 1985) (respondent suspended for eighteen months as a result of misconduct occurring during a two year period arising from the representation of one client involving misrepresentation, conduct prejudicial to the administration of justice, neglect of a legal matter, intentionally failing to seek the lawful objectives of client, intentionally failing to carry out a contract of employment, and intentionally prejudicing or damaging client during course of professional relationship); *In re Sheehy*, 454 A.2d 1360, 1361 (D.C.1983) (en banc) (two year suspension warranted for respondent's neglecting a legal matter and making serious misrepresentations to client and Bar Counsel); *In re Haupt, supra*, 422 A.2d at 768 (respondent suspended for three years for neglect, deceit, misrepresentation to client, and intentional failure to seek client's objectives); and *In re Smith, supra*, 403 A.2d at 296 (respondent suspended for eighteen months for neglect in two cases and misrepresentation to a client concerning a case).

It is therefore ORDERED that respondent, Barry Lenoir, is suspended from the practice of law in the District of Columbia for a period of eighteen months, effective thirty days from the date of this opinion, and that he be required to show fitness for practice prior to reinstatement.

*So ordered.*

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

BAR DOCKET NOS. 53–86, 284–86, 51–87 and 37–88

IN THE MATTER OF: BARRY LENOIR, RESPONDENT.

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This Report concerns charges presented before two separate Hearing Committees. Hearing Committee No. 9 heard Bar Docket Nos. 53–86, 284–86 and 51–87, in which Respondent Barry Lenoir was charged with misconduct arising from three different client matters. The alleged disciplinary violations consist of neglect, misrepresentation, conduct prejudicial to the administration of justice, failure to segregate client property, failure to fulfill a contract of employment, and failure to seek the lawful objectives of a client. Hearing Committee No. 9 found several violations of disciplinary rules, and recommended a sixty-day suspension.

Hearing Committee No. 7 heard Bar Docket No. 37–88, in which neglect, intentional misconduct, dishonesty, misrepresentation and conduct prejudicial to the administration of justice were charged. The Hearing Committee found several violations, recommended dismissals as to some charges, and recommended a suspension of six months with a requirement that Respondent show fitness in order to resume practice.

We concur in most of the recommendations of the two Hearing Committees, but reach a different result as to several charges. Regarding sanction, we recommend a suspension of 18 months, with a requirement to prove fitness to resume practice.

### I. MATTERS BEFORE HEARING COMMITTEE NO. 9

#### Procedural Background

We have before us a second Report from Hearing Committee No. 9 concerning Re-

spondent. The first Report, following a hearing in November 1987, recommended a sixty-day suspension based on violations of several disciplinary rules. In that proceeding, Respondent failed to file an answer to the Petition, and Bar Counsel moved under Board Rule 7.6 for permission to proceed with an *ex parte* presentation of proof.[1] Respondent was present at the hearing and opposed the motion, but it was granted by the Hearing Committee. The Hearing Committee interpreted Rule 7.6 to prohibit Respondent from cross-examining Bar Counsel's witnesses and from presenting any testimony in his defense at the hearing, and conducted the hearing accordingly.

Respondent objected to this procedure, both before the Hearing Committee and before us, on the grounds that his inability fully to participate in the proceeding deprived him of due process rights. In an Order dated November 22, 1988, we concluded that the Rule 7.6 procedures adopted by the Hearing Committee were improper, and remanded the matter to the Hearing Committee with specific instructions to permit Respondent to cross-examine Bar Counsel's witnesses and to present testimony himself. Although we did not agree with Respondent's Constitution-based objections, we did conclude as a matter of policy that even a respondent who fails to file an answer should be given an opportunity, if he is present at the hearing, to cross-examine Bar Counsel's witnesses and to testify. (Since our November 22, 1988 Order in this matter, Board Rule 7.6 has been amended specifically to establish such hearing procedures for a defaulting respondent who is nevertheless present at the hearing.)

In response to our remand order, the Hearing Committee conducted a new hearing, at which Respondent was given an opportunity to cross-examine witnesses, to testify, and to present oral and written argument. The Hearing Committee issued a new Report, reaching the same conclusions as in its initial Report (except for the inclusion of a recommendation of a violation of DR 1–102(A)(4) on a matter overlooked in the initial Report), and again recommended a 60–day suspension. The only exception filed to the Hearing Committee report was that of Bar Counsel, urging a sanction greater than a 60–day suspension.

We review below the Hearing Committee's recommendations on the three matters giving rise to the alleged disciplinary violations.

### 1. *Crawford*

In November 1981, Respondent was retained by Mrs. Bridget Crawford for the purpose of obtaining a divorce. At the time, Respondent quoted Mrs. Crawford a fee of $250 for an uncontested divorce, and $500 for a contested one.

After being retained to obtain the divorce, Respondent represented Mrs. Crawford in foreclosure proceedings against property which she owned with her husband, and in November 1983 he forwarded to her a sum of money representing the net proceeds from a foreclosure sale of the property. In the accompanying correspondence, Respondent quoted Mrs. Crawford a revised fee of $750 for his services, which included those for assistance in the foreclosure, for a separation agreement, and for a divorce. He asked that Mrs. Crawford pay him $600 on account, which she did.

Nothing further happened in the Crawford divorce matter. Late in 1985, Mrs. Crawford prepared a complaint which was eventually forwarded to Bar Counsel, alleging that she had paid Respondent $750 for a divorce, and that he did not perform the requested services. Respondent replied to a written inquiry from Bar Counsel by stating that he had performed services for Mrs. Crawford, that he believed that his fee was earned despite the fact that no divorce was obtained, but that he would

---

1. Board Rule 7.6, as it existed at the time of the hearing, read, in relevant part, as follows:

 A respondent who has not filed an answer may attend the entire proceeding but may present only a plea or testimony in mitigation of sanction.

make a partial refund to Mrs. Crawford in order to resolve the dispute. In view of a written acknowledgment by Mrs. Crawford that Respondent had earned his fee, and Respondent's offer to make a partial refund, in July, 1986 Bar Counsel dismissed its investigation. Although not made a condition of the dismissal, Bar Counsel's notice of dismissal to Mrs. Crawford notes Respondent's offer of a partial refund of his fee.

In September 1986, Bar Counsel learned from Mrs. Crawford that Respondent had not made the promised refund, and also learned that the amount she had paid to Respondent was $600, rather than the $750 that she stated initially. On September 29, 1986, Bar Counsel wrote to Respondent inquiring about the status of the refund. No response was received to this letter. However, at a meeting with Bar Counsel on January 12, 1987, called to discuss why the refund had not been made, Respondent told Bar Counsel that the refund had been given. Bar Counsel asked Respondent to confirm this in writing, which never occurred.

No refund was, in fact, ever made by Respondent. At the disciplinary hearing, Respondent testified that when he reviewed his files (after having made the offer of a refund), he realized that he had been paid only $600, not $750, and therefore felt that the refund was no longer justified.

Bar Counsel charged Respondent with conduct prejudicial to the administration of justice for his failure to cooperate with Bar Counsel's investigation of the *Crawford* matter, and because of his failure to honor the commitment made to Bar Counsel to make a refund to Mrs. Crawford. Bar Counsel also charged Respondent with deceit and misrepresentation, in violation of DR 1–102(A)(4), for his misstatement to

Bar Counsel in January 1987 that a partial refund had been made.

The Hearing Committee recommended that all charges in the *Crawford* matter be dismissed for failure of clear and convincing proof, and we agree. With regard to the charge based on failure to cooperate with Bar Counsel, the Hearing Committee notes that there was conflicting evidence concerning whether certain of Bar Counsel's correspondence was ever delivered to Respondent, and whether Respondent had been keeping Bar Counsel informed of his actions following the original dismissal. Although Respondent did fail to respond to Bar Counsel's letters, there is evidence of telephone contact between the two and of a meeting to discuss the case. The Committee concluded that there was not adequate evidence to establish Respondent's lack of cooperation, and we believe that such a finding is supported in the record.

Regarding Respondent's failure to make a refund to Mrs. Crawford, the Hearing Committee noted Respondent's testimony that the promise had been based on a faulty premise, to wit, that Respondent had been paid $750 by Mrs. Crawford. When he learned that he had been paid only $600, Respondent concluded that a basis for the refund was no longer present. The Committee correctly concluded that this set of facts does not make out a case for conduct prejudicial to the administration of justice.[2]

The Hearing Committee also recommended that the deceit/dishonesty charge (DR 1–102(A)(4)) be dismissed, but did not specifically discuss its reasons. Dismissal is, in our view, appropriate. The basis for the deceit/misrepresentation charge is Respondent's statement at the January 12, 1987 meeting with Bar Counsel that a refund to Mrs. Crawford had been made. While Respondent acknowledges that this statement was incorrect, there is no evidence at all that Respondent had any de-

---

**2.** This situation is thus distinguishable from *In Re Chopvisky,* No. 86–1583 (D.C.App.1987), which is relied on by Bar Counsel. In *Chopvisky,* Bar Counsel stayed potential disciplinary action in reliance on a promise (not fulfilled) to return an unearned fee. Here, the offer to make a partial refund was not, at least on the record, a basis for Bar Counsel's dismissal of the original investigation.

ceitful or deceptive motives in making this incorrect statement or that he knew it was incorrect. There is, in fact, nothing in the record to disturb the Hearing Committee's presumed finding that Respondent's erroneous statement was based on neglect or carelessness. DR 1–102(A)(4) requires more. *See, e.g., In Re Shorter,* 570 A.2d 760 (D.C.App.1990).

## 2. *Pryor*

■ In July, 1985, Respondent was contacted by Mrs. Alberta Pryor to commence proceedings to probate the will of her recently deceased husband, and to attend to other estate-related matters. At the time of this meeting, Mrs. Pryor gave Respondent a document purporting to be her husband's will, and in the months following gave Respondent five checks made out to her husband. Respondent was to deposit these funds in a trust account and to pay certain expenses, including the mortgage on the Pryor residence, from these funds.

From their initial meeting in July, 1985 until February or March, 1986, when he was replaced by successor counsel, Respondent took virtually no action on the Pryor estate. In particular, he failed to initiate probate proceedings and to file the will with the court, and he failed to open a trust account and to deposit the Pryor checks in it. The five checks, in fact, were placed by Respondent in an unrelated file, and only were discovered by successor counsel in June, 1986. Respondent's inactivity became known to Mrs. Pryor early in 1986, when she received notice from the holder of the mortgage on her house that foreclosure proceedings were to be begun for non-payment of the loan.

For this conduct, Bar Counsel charged Respondent with neglect (DR 6–101(A)(3)), intentional failure to pursue a client's objectives (DR 7–101(A)(1)), intentional failure to carry out a contract of employment (DR

7–101(A)(2)), and failure to secure a client's property (DR 9–103(B)(2)).

In its Report, the Hearing Committee concluded that the neglect charge had been adequately proven, but that the remaining charges should be dismissed for failure to present clear and convincing evidence of them. We agree with the Hearing Committee's finding of neglect, and its recommendation of dismissal of the intentional misconduct charges under DR 7–101(A)(1) and (A)(2). Respondent's neglect is clear. The evidence shows that, from the time he was retained to represent the Pryor estate in July, 1985 until he was replaced in February, 1986, he did nothing other than communicate with a few financial institutions concerning the opening of a trust account. Respondent took no steps to open any trust accounts, he attended to no other financial matters as requested by Mrs. Pryor and, perhaps most importantly, he failed to file the Pryor will and initiate formal probate proceedings.[3]

■ We also agree with the Hearing Committee that the charges of violation of DR 7–101(A)(1) (intentional failure to seek the lawful objective of his client) and DR 7–101(A)(2) (intentional failure to carry out a contract of employment) be dismissed, because we fail to see any evidence of *intention* in Respondent's misconduct. In the context of DR 7–101(A)(1), the Court has interpreted intentional failure to seek a client's objectives as requiring an element of purposefulness or deliberateness or, at a minimum, an aggravated neglect. *In Re Reback,* 487 A.2d 235, 240 (D.C.1985), *aff'd* in relevant part, 513 A.2d 226 (1986) (*en banc*). We believe that intention under DR 7–101(A)(2) is no different. No such evidence was introduced at the hearing.

Bar Counsel relies only on an explanation offered by Respondent—that he was heavily engaged in another matter at the time of the Pryor representation (Bar Exhibit 25, p. 2)—as evidence that he intentionally aban-

---

**3.** The parties have argued at length over the significance of D.C.Code § 18–111 to the neglect charge. That provision requires a person in possession of a decedent's will to file it with the Clerk of the Superior Court within 90 days of receiving it. Since Respondent was under an independent professional obligation to attend to the Pryor estate matters in a prompt manner, we would find neglect in this matter without the existence of this provision of law, and so view it as largely irrelevant to our decision.

doned the *Pryor* matter in favor of another. The Hearing Committee was apparently unpersuaded by this evidence, as are we. This evidence may offer an explanation for Respondent's neglect, but certainly does not constitute clear and convincing evidence of the necessary degree of intent to violate DR 7–101(A)(1) or (2).

■ Bar Counsel also charged that Respondent's conduct violated DR 9–103(B)(2), requiring a lawyer to

> [i]dentify and label securities and property of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

We are aware of no decided cases under this provision, but have no hesitation in concluding that it has been violated. The evidence is undisputed that Respondent retained for some months, uncashed and misfiled, five checks that should have been deposited in a Pryor trust account.

The checks were obviously "property of a client," and Respondent clearly failed to put them in a "place of safekeeping as soon as practicable." Putting the checks in a place of safekeeping would, under the circumstances, have required that they be deposited in a bank account; if there were some reason to hold the checks for a brief period, they should have been put in a secure place. Neither was done.

■ The Hearing Committee had no basis on which to recommend a dismissal of this charge. Because of the clarity of the record on this point, there is also no need to remand for further proceedings on this aspect of the case. Instead, we conclude that Respondent violated DR 9–103(B)(2).[4]

### 3. *Holley*

■ Sarah J. Holley retained Respondent in June 1984, to represent her in connection with a discrimination claim against the owners of the Channel 9 television station in Washington, D.C. Holley had been dismissed from employment at Channel 9 on October 30, 1983, and shortly thereafter filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC). She was represented by counsel (not Respondent) in those proceedings, which resulted in a decision adverse to her on or about August 6, 1984. On that date, the EEOC issued to Ms. Holley a "Notice of Right to Sue," which gave her the right to initiate a civil action against Channel 9 if done within 90 days of the date of receipt of the Notice.

Holley was unable to afford the continued services of the attorney who represented her before the EEOC and so, in June, 1984, retained Respondent to represent her on a contingency basis in litigation against Channel 9. When Holley received the EEOC Notice in August 1984, she provided it to Respondent, later spoke with him several times by telephone, and met with him in September 1984. At that meeting, Respondent reiterated his agreement to represent her and to take steps to assert her claims.

Ms. Holley later telephoned Respondent several times, still during the 90–day period in which suit could be brought, to ascertain the status of her case. No complaint was ever filed during this 90–day time period and, on one occasion, Respondent advised Ms. Holley that the 90–day period did not apply to her and that he was otherwise pursuing the case. Ms. Holley continued to contact Respondent after the 90 day period had run, and he continued to advise her that he was working on the matter.

---

**4.** The Complaint also charged a violation of DR 2–110(A)(2), prohibiting a lawyer from withdrawing from employment without taking steps to avoid foreseeable prejudice to the client. Bar Counsel's theory is that Respondent's lengthy inactivity constituted a de facto withdrawal, and that no steps were taken to protect the client's interests.

Bar Counsel did not pursue this charge in post-hearing briefs, and the Hearing Committee did not specifically address it. We take Bar Counsel's inaction as a concession of inability to prove this charge and, from our own review of the record, see no reason not to recommend a dismissal of it.

In September 1986, Respondent falsely advised Holley that he had filed suit on her behalf in Superior Court of the District of Columbia. Ms. Holley requested copies of the court papers, but they were never provided to her and, when she eventually went to the Superior Court to locate the file of her case, was unable to do so.

In November 1986, Ms. Holley consulted with another attorney, Thomas Holland, concerning her EEOC claim. Mr. Holland was also falsely advised by Respondent that a suit in Superior Court was pending, and Respondent failed to honor Mr. Holland's repeated requests for copies of the court papers.

In February 1987, Respondent filed *Holley v. District News, Inc., et al.*, No. 1167-87, in D.C. Superior Court, alleging breach of contract and promissory estoppel claims arising from Ms. Holley's dismissal from Channel 9. In July 1987, Respondent delivered a letter to Ms. Holley which indicated that service of process in the Superior Court litigation had been obtained on the defendants, and stating that he had advised the defendants not to respond as he intended to file an amended complaint. The compaint, however, had never been served on any defendant, a fact of which Respondent was well aware.

After further unsuccessful efforts to obtain information about her suit from Respondent, Ms. Holley filed a complaint against him with Bar Counsel. Bar Counsel wrote letters to Respondent on February 23, March 26, and April 2, 1987, requesting information concerning the *Holley* case. On April 23, 1987, Ms. Holley sent a certified letter to Respondent requesting information concerning her case, which letter was received at Respondent's office on April 28, 1987. Respondent failed to reply to any of these inquiries. On June 24, 1987, Bar Counsel hand-delivered a letter to Respondent's office requesting answers to certain specific questions concerning the *Holley* matter and requesting a copy of Respondent's file in the *Holley v. Detroit News* litigation. Although he requested an extension of time to respond to this letter, Respondent never provided any substantive information to Bar Counsel.

On these facts, Bar Counsel charged that Respondent had engaged in neglect (DR 6–101(A)(3)), dishonesty (DR 1–102(A)(4)), intentional failure to pursue a client's objectives and intentional failure to carry out a contract of employment (DR 7–101(A)(1) and (2)), conduct prejudicial to the administration of justice by failing to cooperate with Bar Counsel (DR 1–102(A)(5)), and knowingly advancing an unwarranted claim (DR 7–102(A)(2)). The Hearing Committee found a violation of all charges except knowingly advancing an unwarranted claim, and we agree with it.

The evidence in support of the Hearing Committee's conclusions is both overwhelming and uncontradicted. As regards the neglect charge, one need look no further than the two and one-half year period following the EEOC decision concerning Ms. Holley, during which Respondent did absolutely nothing despite his obvious awareness of the need to act. When one adds to these facts the repeated inquiries by Ms. Holley concerning the status of her case, and Respondent's evasive and then outright dishonest responses, the case for the two intentional violations is also well-established. Respondent's inactivity is precisely the kind of deliberate inaction that transforms neglect into intentional misconduct. *See, e.g., In Re O'Donnell*, 517 A.2d 1069 (D.C.App.1986).

Dishonesty is proven by the instances in which Respondent falsely advised Holly and her successor attorney that a complaint had been filed, and in which he advised Holley that service of process had been accomplished. Respondent was aware of the falsity of these statements at the time they were made, and clearly made them in order to deceive Holley into believing that her claims were being pursued by him.

■ Finally, the failure to cooperate with Bar Counsel flows from Respondent's repeated refusal to respond in any fashion to any of Bar Counsel's several inquiries. That such conduct constitutes conduct prejudicial to the administration of justice is

well-established. *See In Re Haupt,* 444 A.2d 317 (D.C.1982); *In Re Whitlock,* 441 A.2d 989 (D.C.1982).

 The one charge arising from the *Holley* representation that the Hearing Committee recommended be dismissed is that under DR 7–102(A)(3), prohibiting a lawyer from knowingly advancing a claim unwarranted under existing law, except a claim which can be supported by a good faith argument for an extension, modification or reversal of existing law. Bar Counsel points out that a three year statute of limitations would have applied to *Holley v. Detroit News* under D.C.Code § 12–301(7) and (8), and that, since the complaint was filed approximately 3 years and 4 months after Ms. Holley's discharge from Channel 9, it was out of time and, therefore, "unwarranted."

The Hearing Committee did not specifically discuss its reasons for recommending a dismissal of this charge, but its action was correct. That the statute of limitations argument presented by Bar Counsel may have appeal as a proposition of law does not mean that the claims in *Holley v. Detroit News* were unwarranted for disciplinary purposes. Statute of limitations issues are among the most complex in litigation, raising questions of when a claim accrued and whether anything operated to toll the running of the limitations period. On the record before us, we are not prepared to conclude from the mere filing, three years and four months after termination of employment, of a claim arising from the termination and governed by a three-year statute of limitations, that such a claim was "unwarranted" under DR 7–102(A)(2).

## II. HEARING COMMITTEE NO. 7

Bar Counsel's charges in the matter before Hearing Committee No. 7 arise from Respondent's representation of Mr. Maryland Banner in 1986 and 1987. Banner, a federal employee, had filed a *pro se* racial discrimination claim in an administration proceeding against his agency, and had initiated *pro se* litigation in federal District Court in Washington, D.C. based on the same claim. When defendant United States moved to transfer the court litigation to Philadelphia, Banner retained Respondent to represent him and paid him a $3,000 retainer.

At the time he was retained by Banner (1986), Respondent was not a member of the federal District Court bar in Washington, and so he sought to associate other counsel, Robert L. Bell, with him on the case. Bell told Respondent that he needed to meet Banner before he would agree to participate in the case. Banner and Bell never did meet. Respondent, however, added Bell's name to an opposition to the government's motion to transfer, which he filed with the District Court, and appeared alone before the Court to argue the motion.

The government's motion was granted, and the case was transferred to the Eastern District of Pennsylvania (in Philadelphia), where Respondent also was not admitted to practice. Unbeknownst to Banner, Respondent filed pleadings in the Philadelphia court, signing Banner's name to them and making it appear that Banner was appearing *pro se.*

The court in Philadelphia issued a scheduling order in the case, calling for completion of discovery and the filing a pre-trial memorandum in March, 1987. The only steps taken by Respondent in the litigation was the service of some interrogatories, which the government never answered, and the representation of Banner in a deposition noticed by the government. The Court-ordered pretrial memoranda were not filed by either side. Near the time for filing a proposed scheduling order, the government moved for a stay of the litigation pending the outcome of the administrative discrimination proceeding. That motion was never acted upon by the court, although no other activity occurred in the litigation.

Respondent also represented Banner in the EEOC administrative matter, where he attended a deposition and represented Banner in a hearing. At the close of the hearing, Respondent specifically asked for an opportunity to supplement the record with

additional witness statements, and agreed to waive closing argument in favor of filing a post-hearing brief. None of these steps was taken, however, and the matter was eventually decided against Banner.

Following receipt of a complaint from Banner against Respondent, Bar Counsel made several written requests to Respondent for information concerning the complaint. Respondent ignored each of these requests.

For Respondent's conduct in the civil litigation, Bar Counsel charged him with neglect (DR 6–101(A)(3)); intentional failure to pursue his client's lawful objectives (DR 7–101(A)(1); and intentional failure to fulfill a contract of employment (DR 7–101(A)(2)); for conduct in the administrative matter, Bar Counsel charged neglect. Also charged were intentional prejudice to Respondent's client by failing to keep the client informed of developments and failing to return requested papers (DR 7–101(A)(3)); knowingly making a false statement and engaging in dishonesty in connection with his unauthorized use of attorney Bell's name on a pleading (DR 7–102(A)(5) and DR 1–102(A)(4)); withdrawal from employment without returning client papers and the unearned portion of a fee (DR 2–110(A)(2) and (3)); failure promptly to deliver a client's property (DR 9–103(B)(4)); and conduct prejudicial to the administration of justice for lack of cooperation with Bar Counsel (DR 1–102(A)(5)).

The Hearing Committee recommended a finding of neglect in Respondent's handling of the administrative matter, of knowingly making a false statement and engaging in dishonesty in connection with the use of Bell's name on a pleading, of conduct prejudicial to the administration of justice, and of failure promptly to return the client's file and the unearned portion of a fee. Dismissals of the other charges were recommended. Neither side excepted to the Hearing Committee's Report, with which we generally agree.

### 1. Alleged Misconduct In The Philadelphia Litigation

 The Hearing Committee did not find any neglect in Respondent's activities in the Philadelphia action. It noted that Respondent did some work there, and that the failure to file a pre-trial memorandum was not, standing alone, neglect, since the government's motion for a stay had the *de facto* effect of staying the action. The Hearing Committee also found no intentional failure to pursue a client's objectives, or intentional failure to fulfill a contract of employment, conclusions which flow directly from the recommendation that no neglect occurred.

The Hearing Committee's findings, not excepted to by Bar Counsel, are well-supported in the record, and we agree with them.

### 2. *Misconduct Arising From The Administrative Discrimination Claim*

 The Hearing Committee (one member dissenting) found neglect in Respondent's failure to submit certain additional testimony and to file a post-hearing brief in the administrative matter. At the disciplinary hearing, Respondent explained that Banner had asked him to seek leave to submit additional witness statements, and that he did not submit them because he later concluded they were either unnecessary or could be harmful to Banner. Regarding failure to submit a post-hearing memorandum, Respondent testified that he believed it unnecessary because the government agency's brief was "weak." The Hearing Committee did not find these explanations credible.

 Since neglect under our disciplinary rules cannot be based only on an error in professional judgment (*In Re Reback*, 513 A.2d 226 (D.C.1986) (*en banc*), adopting panel decision at 487 A.2d 235, 238 (1985)), we must be cautious never to base neglect on a lawyer's informed decision not to take certain action in litigation, where hindsight shows that decision to have been unsound. That, however, is not the situation here. Regarding the failure to submit additional witnesses statements, the Hear-

ing Committee did not believe Respondent's testimony that he did not submit them because he decided they would not have been helpful. Rather, the Hearing Committee concluded, Respondent simply failed to evaluate the worth of this evidence. The Hearing Committee reached the same conclusion concerning the failure to file a post-hearing brief: the failure occurred not because of a deliberate decision by Respondent, but because he ignored his professional obligations to his client.

Respondent's neglect, then, is his failure to consider and act upon these litigation matters. He was demonstrably aware of the need to consider post-hearing matters in the administrative claim and, failing to do so, committed neglect. Neglect under similar circumstances occurred in *In Re Margulies*, No. 88–1932 (D.C.App.1989), where an attorney attempted to explain his failure to file a brief on appeal by saying that he had considered the appeal and concluded that there were no sound grounds for it. The Hearing Committee did not believe the lawyer's testimony, and concluded that he simply neglected the appeal. The Court of Appeals approved a neglect violation on these facts.

### 3. *DR 7–102(A)(5) and DR 1–102(A)(4)*

■ Bar Counsel charged Respondent with violations of DR 7–102(A)(5) (knowingly making a false statement of law or fact), and DR 1–102(A)(4) (deceit and misrepresentation) in connection with his unauthorized use of Attorney Bell's name and his own name as signatories to a pleading, in a manner intended to indicate that Mr. Bell was co-counsel in the matter.

The Hearing Committee's conclusion is, in our view, correct. By placing Mr. Bell's name on the opposition to the motion to transfer, and signing his name thereon, Respondent was affirmatively representing to the court and opposing counsel that Mr. Bell was counsel in the case. Such a representation was false, and known to be so by Respondent. Mr. Bell was unequivocal in his testimony that he told Respondent he would make a decision on whether to asso-

ciate himself with Respondent *after* he met Banner, and that he never met Banner. When Mr. Bell later learned that his name had been used on a pleading by Respondent, he wrote to Respondent protesting this action and demanding that his name not be so used. Respondent never replied to this letter.

Respondent's only defense is that he "thought" he had permission to use Mr. Bell's name. While a good faith belief in such authorization would avoid these disciplinary violations (for knowing or intentional misstatements), the Hearing Committee did not believe Respondent's testimony. Since that testimony conflicted with Mr. Bell's testimony, which the Committee found credible, and with an inference which can be drawn from Respondent's failure to respond to Mr. Bell's letter protesting the use of his name on the pleading, the Hearing Committee was entitled not to credit Respondent's testimony. Thus, we agree with the recommendation that DR 7–102(A)(5) and DR 1–102(A)(4) were violated.

### 4. *DR 1–102(A)(5)*

■ The Hearing Committee found clear and convincing evidence of Respondent's conduct prejudical to the administration of justice in his repeated failure to respond to any of Bar Counsel's legitimate requests for information. The Committee's conclusion is well-founded.

### 5. *DR 2–110(A)(2), DR 2–110(A)(3), DR 9–103(B)(4)*

These three disciplinary rules concern withdrawal from employment without delivering to the client all papers to which the client is entitled (DR 2–110(A)(2)), withdrawal from employment without refunding promptly any part of funds paid in advance that had not been earned (DR 2–110(A)(3)), and failure to deliver promptly to the client, as requested by him, property in possession of the lawyer to which the client is entitled (DR 9–103(B)(4)).

Regarding DR 2–110(A)(2), the Hearing Committee did not find that a violation had occurred, because a requisite element—withdrawal of the attorney—had not oc-

curred. The Hearing Committee carefully reviewed the evidence that Banner did, on several occasions in late 1987, attempt to dismiss Respondent, but the Committee also found that Banner, *de facto*, rescinded these actions by continuing to consult with Respondent during this period. The attorney-client relationship was finally broken, according to the Committee, sometime in early 1988, when Banner filed a complaint with Bar Counsel against Respondent.

We agree with the Hearing Committee that Respondent never "withdrew" from representation of Banner. He was discharged by his client in early 1988 and, under DR 2–110(B)(4), was obliged to withdraw, but Bar Counsel did not charge a violation of this disciplinary rule by Respondent's failure to withdraw.

Although the Committee found no withdrawal for purposes of DR 2–110(A)(2), it did find a violation of the related DR 2–110(A)(3), which provides that:

A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.

The Committee did not discuss "withdrawal" in the context of its DR 2–110(A)(3) recommendation. We do not see how withdrawal could be different for purposes of DR 2–110(A)(2) and (A)(3). In other words, since we agree with the Hearing Committee's conclusion that no withdrawal occurred under DR 2–110(A)(2), we must recommend that no violation of DR 2–110(A)(3) be found because there was no withdrawal under that provision either.

A second basis for our inability to concur in the Committee's finding of a violation of DR 2–110(A)(3) is our disagreement with the Hearing Committee's conclusion (one member dissenting) that Bar Counsel had proven, clearly and convincingly, that a part of Respondent's fee re-

mained unearned. The Hearing Committee adopted the view that Respondent had the burden of showing that he had earned the $3,000 retainer fee paid to him and that, because of Respondent's failure to introduce any form of accounting for his services, the Committee was entitled to conclude that the fees were not fully earned and should have been returned in part.

No such presumption is available in this case. Bar Counsel is obliged to prove, by clear and convincing evidence, that a violation of a disciplinary rule has occurred. BPR Rule 11.4. Although Bar Counsel may be entitled to certain inferences and presumptions to prove its case (*see, e.g., In Re Godfrey*, D.N. 316–87 (Bd. on Prof. Resp., May 25, 1989)), there is no exception to Bar Counsel's burden of proof. Contrary to the Committee's observation, Bar Counsel had the means to prove that the $3,000 fee was not earned: it had evidence of Respondent's hourly rate for legal services ($75 to $100), and it could have provided the Committee with informed estimates of the amount of time spent by Respondent on the various tasks in which he engaged. While such estimates might not be absolutely accurate, if properly done they would likely be admissible and could support a finding that a portion of a fee remained unearned.

The Hearing Committee member who dissented on this point took, in our view, the correct approach. He reviewed the activities undertaken by Respondent (preparation of pleadings, attendance at depositions and the administration hearing meetings with Banner) and, without quantifying their fee components, concluded that they *prima facie* were sufficient to require Bar Counsel to have introduced affirmative evidence of Respondent's failure to earn the $3,000 fee.[5]

Finally, the Committee recommends finding a violation of DR 9–103(B)(4) (failure to deliver, *at the client's request*, property in

5. Where a lawyer has accepted a fee and then done *no* work, those facts speak for themselves in supporting a charge of failure to return an unearned fee. *See, e.g., In Re Landesberg*, 518 A.2d 96 (D.C.1986). But where, as here, a lawyer has performed appreciable work, Bar Counsel must show clearly and convincingly that the value of such work was less than the fee charged.

possession of the lawyer to which the client is entitled). It reasons that, once the lawyer-client relationship was broken in early 1988, "respondent was under an obligation to return the subject files promptly." (Hearing Committee Report at 30).

In its analysis of this charge, the Committee reiterates its finding that the several letters of discharge sent to Respondent by Banner in 1987 (each with a request for return of files) were rescinded by Banner's subsequent conduct. No such rescission occurred after March 3, 1988, when Respondent was formally served with a disciplinary complaint and, according to the Committee, from that point he was obliged to effect a return of the files.

While it is true that the attorney-client relationship was finally severed in early 1988, there is no evidence that Banner ever renewed his request for his files in 1988. The Committee concluded that the 1987 requests for return of the files were rescinded and, unless we indulge in the unwarranted assumption that those requests were somehow revived in 1988, there simply was no request then for return of the files. Without such a request, DR 9-103(B)(4) is not violated. Thus, we recommend a dismissal of this charge.

## III. RECOMMENDED SANCTION

Bar Counsel sought a suspension of six months for the *Pryor* and *Holley* violations (before Hearing Committee No. 9), and a one year suspension for the *Banner* violations (before Hearing Committee No. 7). Hearing Committee No. 9 recommended a suspension of 60 days, and Hearing Committee No. 7 (aware of the recommended violations found by Hearing Committee No. 9) recommended a suspension of 180 days, plus a requirement of proof of fitness as a condition to reinstatement to practice.

The Hearing Committee recommendations, while helpful, are of limited value to us because we are recommending disposi-

tions as to several charges against Respondent that are different from those of the Hearing Committees. The recommended violations before us are the following:

1. neglect (Pryor, Holley, Banner);
2. intentional failure to pursue a client's objectives (Holley);
3. intentional failure to carry out a contract of employment (Holley);
4. failure to secure a client's property (Pryor);
5. dishonesty (Holley, Banner);
6. knowingly making a false statement (Banner); and
7. conduct prejudicial to the administration of justice (Holley, Banner).

In view of the breadth and number of recommended disciplinary violations, an independent analysis by us of the factors underlying sanctions is appropriate.[6] One such factor is the seriousness of the violations, and we note that the violations here were more than technical ones, involving several intentional violations and dishonesty.

Another factor is prejudice to the client. In addition to the general prejudice of the inconvenience and frustration of dealing with an unethical lawyer, Respondent's clients did suffer more specific prejudice. Ms. Holley never received an adjudication of her civil action against her employer for discrimination, and Mr. Banner failed to receive effective representation in his administrative discrimination claim.

A third factor in formulating a sanction is the number of Code provisions violated by the lawyer's conduct. Here, Respondent's misconduct in *Holley*, *Pryor* and *Banner* implicated violations of seven separate provisions of the Code. We are also to take into consideration whether dishonesty was proven, and here it was in two separate instances—*Holley* and *Banner*.

Respondent's attitude is also a factor. Hearing Committee No. 9 did not offer any observations on Respondent's contrition, but our review of the transcript indicates

6. The factors to be taken into consideration in deciding on an appropriate sanction have been enumerated in *In Re Haupt,* 422 A.2d 768 (D.C. 1980) and *In Re Reback,* 513 A.2d 226 (D.C. 1986) (*en banc*).

that none was expressed. Hearing Committee No. 7 specifically noted Respondent's lack of contrition. Finally, no prior misconduct was brought to our attention.

We are without doubt that these factors require that Respondent be subject to a substantial period of suspension and a requirement that he prove fitness before being allowed to resume the practice of law. Although the incidents here are Respondent's first disciplinary violations, they represent serious misconduct over a period of four years, involving three separate clients. This pervasive misconduct, including the repeated instances of dishonesty and refusal to cooperate with Bar Counsel, coupled with Respondent's lack of contrition, amply demonstrate to us that Respondent is not fit to practice law. It follows, then, that before being allowed to resume the practice of law, Respondent prove that he is fit to do so.

As regards the recommended period of suspension, we believe that 18 months is appropriate. This appears to be the minimum period of suspension imposed in prior cases involving similar violation. In *In Re Bond*, No. 84–1774 (D.C.App.1985), for example, an attorney was suspended for 18 months for misrepresentation, conduct prejudicial to the administration of justice, neglect, intentional failure to carry out a contract of employment and to pursue a client's lawful objectives, and intentional prejudice to a client. In that case, a lawyer was retained to file an FCC application for a radio station. The lawyer took no action on the matter, and then repeatedly lied and attempted to deceive the client, successor counsel, and Bar Counsel.

In *In Re Sheehy*, 454 A.2d 1360 (D.C. 1983), and *In Re Alexander*, 496 A.2d 244 (D.C.1985), two-year suspensions were ordered for violations similar to those here. In *Sheehy*, an attorney engaged in neglect, misrepresentation and conduct prejudical to the administration of justice through his inadequate handling of a lawsuit, and deception of his client and Bar Counsel. Although *Sheehy* involved fewer violations than those here, the attorney there had two instances of prior discipline. In *Alexander*, a two-year suspension was ordered for dishonesty, and multiple instances of neglect, intentional failure to pursue a client's objectives, and conduct prejudicial to the administration of justice. The lawyer's defiant attitude and prior discipline were aggravating factors.

But for the absence of prior discipline in this case, a two-year or longer suspension would be warranted. Under the facts presented to us, however, we believe that the several disciplinary criteria discussed above well support a suspension of 18 months and a requirement that Respondent prove fitness before being reinstated to the practice of law, which terms of suspension are compatible with prior dispositions by the Court.

BOARD ON PROFESSIONAL
RESPONSIBILITY

By: /s/ BARRY E. COHEN
Barry E. Cohen

March 21, 1990

All Members of the Board concur in this Report except Mr. Carter, who did not participate, and Ms. Wynn, who is recused.