In re Michael J. MORRISSEY, Respondent, a Member of the Bar of the District of Columbia Court of Appeals.

No. 91–BG–564.

District of Columbia Court of Appeals.

Submitted Sept. 13, 1994.
Decided Oct. 3, 1994.

---

**186**

Before SCHWELB and FARRELL, Associate Judges, and REILLY, Senior Judge.

## ON REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

### PER CURIAM:

In this reciprocal discipline proceeding, the Board on Professional Responsibility has recommended that respondent be suspended from the practice of law in the District of Columbia for eighteen months and required to prove fitness as a condition of reinstatement. Bar Counsel concurs in the recommendation. We accept the Board's recommendation for the reasons set forth in its report and recommendation, appended hereto. In particular, we agree with the Board that, although no reason exists why we should not impose reciprocal discipline, *see* D.C.Bar R. XI, § 11(c), imposition of the sanction levied by the Supreme Court of Virginia—the equivalent of disbarment under our Rule XI—would be inconsistent with our

1. *See also* D.C.Bar R. XI, § 9(g) (court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct ...").

previous sanctions for misconduct of similar gravity. *See, e.g., In re Lenoir,* 585 A.2d 771 (D.C.1991); *In re Thornton,* 421 A.2d 1 (D.C. 1980).[1] But we agree further with the Board that a requirement of proof of fitness is necessary in this case, because—in the Board's words—"[r]espondent's conduct in Virginia and his conduct before its Board raise serious questions about his legal capabilities, and his prolonged refusal to recognize his misconduct gives us good reason to question his understanding of his professional ethical responsibilities."

Accordingly, Michael J. Morrissey is hereby suspended from the practice of law in the District of Columbia for a period of eighteen months from the date of this opinion, and reinstatement shall be conditioned upon proof that he is fit to practice law. D.C.Bar R. XI, §§ 3(a)(2), 16.[2]

*So ordered.*

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS
### BOARD ON PROFESSIONAL RESPONSIBILITY

### BAR DOCKET NO. 131–91

### IN THE MATTER OF: MICHAEL MORRISSEY, RESPONDENT.

### *REPORT AND RECOMMENDATION OF THE BOARD OF PROFESSIONAL RESPONSIBILITY*

On May 28, 1991, the Court of Appeals temporarily suspended Respondent based on discipline imposed in Virginia, and referred this matter to the Board for a recommendation as to whether reciprocal discipline should be imposed. For the reasons presented below, we recommend that reciprocal discipline be imposed, but that the sanction be different than that ordered in Virginia.

2. We direct respondent's attention to the notification requirements of D.C.Bar R. XI, § 14.

## I. *The Virginia Disciplinary Proceedings*

In January, 1991, Respondent was disciplined in Virginia for misconduct in two separate matters. In one, he was suspended for six months for violations of DR 1–102(A)(3) (deliberately wrongful conduct adversely reflecting on fitness to practice law), and DR 1–102(A)(4) (dishonesty). Respondent had been retained by a client in connection with criminal proceedings in Maryland and Ohio. The client paid Respondent a $3,300 advance. Respondent retained an Ohio attorney to represent the client in that state, writing a check to him for $500. The check was dishonored by Respondent's bank for insufficient funds, and Respondent thereafter refused to provide funds to make the check good.

The second proceeding, for which Respondent's Virginia license to practice law was revoked, arose from a lawsuit brought by a Richmond, Virginia law firm against Respondent to collect $2,000 for legal services. A judgment for that amount was awarded the law firm in a Virginia District Court, and Respondent appealed to the Circuit Court.

Respondent's unprofessional, perhaps even bizarre, conduct before the Circuit Court gave rise to the disciplinary proceedings against him. Morrissey first argued that the Virginia Circuit Court had no jurisdiction over him because of improper service of process, despite his failure to raise this defense in the court below. Later, on the day when a trial de novo was to begin, Respondent sought a continuance, asserting that his retained counsel could not be present. The presiding judge denied the request, finding that Respondent had not retained counsel. The trial proceeded and a jury verdict for $2,000 was returned.

At Respondent's request, entry of judgment was deferred to allow the parties to reach a settlement. When settlement negotiations apparently failed, Respondent sought a hearing date for a motion for a mistrial (without informing the other party) and then, only minutes before the time of hearing on that motion, served and filed unsigned motions for a mistrial, for dismissal, and to strike a certain pleading and for sanctions. The motion to dismiss offered no reasons therefor; the motion for mistrial asserted prejudice from Respondent's being required to proceed to trial without counsel; the motion to strike stated no reasons but, at the hearing, Respondent complained of a reference to settlement discussions in a pending motion of the plaintiff to enter judgment on the $2,000 verdict.

The judge denied all of the motions, entered judgment on the verdict, and awarded sanctions against Respondent, finding his motions to be frivolous and to have no purpose other than delay. Morrissey noted an appeal of the judgment, and then failed to order a complete copy of the transcript, as required by Virginia rules.

On these facts, the Virginia Disciplinary Board found Respondent to have violated the following Virginia Disciplinary Rules:

DR 1–102(A)(4)—conduct involving dishonesty, fraud, deceit or misrepresentation which adversely reflects on a lawyer's fitness to practice law;

DR 7–102(A)—assertion of positions in litigation to harass or injure another or which are frivolous; knowingly make a false statement of law or fact;

DR 7–105(A)—disregard of local procedural rules.[1]

The dishonesty violation was based on Respondent's misrepresentation to the Court concerning his having hired Counsel to represent him. According to the Virginia Board, Respondent demonstrated amusement, if not pride, in his deliberate effort to leave "the attorney's status ... unclear after a direct question by the Court." Opinion, VSB Docket No. 90–031–1002.

The DR 7–102(A) misconduct was based on numerous actions of Respondent during the trial of the $2,000 claim. According to the Virginia Board,

it is impossible to fully describe Morrissey's conduct. The specific findings in [the court's opinion] reflect only examples of Morrissey's actions, and a full appreciation

---

1. This provision was found in former DR 7–106(A) in the District of Columbia.

of what he did can be gained only through the entire proceedings before the Board ... Describing all of his similar misconduct would be prohibitively voluminous *Id.*

The Board specifically referred to Respondent's three post-trial motions, on which it agreed with the trial court that they were frivolous and evinced no purpose other than delay. It further relied on Respondent's repeated, duplicative motions directed to jurisdiction; to his indifference to fundamental rules of pleading; and to his failure to file papers in a timely manner and to give opposing counsel timely notice of his submissions to the court.

> The Virginia Board concluded as follows: [Respondent's] conduct in the Courts that heard his case can be characterized only as abuses of the legal process by every means available to him. His abuses were dishonest and in total disregard of even the most rudimentary sense of propriety in the Courts. The extreme degree of Morrissey's abuses and his failure to understand, even remotely, the intolerable nature of his misconduct leave the Board no sanction other than the revocation of his license to practice law.

## II. *History of Reciprocal Discipline Proceedings in the District of Columbia*

In May, 1991, the Court of Appeals temporarily suspended Respondent under Rule XI, Section 11(d), pending the outcome of reciprocal disciplinary proceedings before the Board and the Court based on the Virginia discipline. In October, 1991, Bar Counsel advised the Board that Respondent had appealed his Virginia discipline to the Supreme Court of that state and suggested, with Respondent's concurrence, that the Board's consideration of this matter be deferred pending the outcome of the appeal. The Board, through its Executive Attorney, agreed to the deferral.

The Virginia Supreme Court affirmed Respondent's discipline in June, 1992. The next month, Respondent moved the Court of Appeals for vacation of the interim suspension order, arguing that the Virginia discipline was not a proper basis on which to apply reciprocal discipline. In a per curiam order filed in August, 1992, the Court denied Respondent's motion.

Following the Court's Order, there commenced a tortuous process lasting for some four months during which Respondent both sought repeated extensions of time in which to file briefs with the Board *and* filed some 400 pages of materials with us. This process began on August 11, 1992, when the Board's Executive Attorney advised Respondent that any submission he wished to make on reciprocal discipline should be made by September 1, 1992. In September, 1992, when the Board was scheduled to consider this matter, counsel for Respondent sought a 60-day extension of time in which to file a brief. Since the matter had been pending before us for more than one year, the Board initially granted only a 10-day extension of time. A further extension to October 19, 1992 was granted, by which time Respondent filed a brief. Leave to file further briefs was sought, and in early December, 1992, Respondent submitted over 200 pages of additional briefing, to which Bar Counsel responded. In January, Respondent sought leave to file amended briefs, which the Board denied, since no good reason was offered for this extremely untimely submission.

## III. *Discussion*

Under Rule XI, Section 11(c), reciprocal discipline is to be imposed unless the Respondent proves, by clear and convincing evidence or it appears on the face of the record, that one of the following five factors is present:

1. the procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

2. there was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistent with its duty, accept as final the conclusion on that subject;

3. the imposition of the same discipline by the Court would result in grave injustice;

4. the misconduct established warrants substantially different discipline in the District of Columbia; or

5. the misconduct elsewhere does not constitute misconduct in the District of Columbia

Although Respondent's legal points are heavily disguised by his prolixity, he appears to argue against reciprocal discipline on the grounds that the Virginia proceedings denied him due process, that there was a grave infirmity of proof in Virginia, and that the imposition of reciprocal discipline would result in grave injustice.[2] We disagree.

### There Was No Infirmity of Proof in the Virginia Proceedings

Respondent recites at length the asserted factual history of his relationship with L. Douglas Wilder, Jr., the Virginia attorney whose status the Virginia Board found was misrepresented to the court. There was contradictory evidence on this issue introduced at the Virginia disciplinary hearing, with Respondent testifying one way, and Wilder and the Virginia trial judge another. It is implicit under our reciprocal discipline jurisdiction that our function is not to retry the Virginia disciplinary matter, but to determine whether there was a grave infirmity of proof. There was no such infirmity. The testimony of Wilder and the trial judge provided ample evidence on which the Virginia Board could have found against Respondent, and we see no basis not to respect its decision.

The same is true for Respondent's argument that he did not violate the Virginia disciplinary rules concerning the filing of frivolous motions. Respondent proffered explanations for his motions, but both the trial court and the Virginia Board independently assessed the evidence, and found Respondent's position unpersuasive.

Regarding the disciplinary violation arising from the dishonored check, Respondent merely argues around the edges—that the Ohio lawyer was retained by his client and not by him, that there was no complaint by the client, and that the deposition of the complaining Ohio lawyer was improperly admitted into evidence in the disciplinary proceeding. No affirmative evidence is offered by Respondent that he did not commit the offense charged. Nothing proffered by Respondent gives us any reason to believe that there was an infirmity of proof on this disciplinary violation.

### There Was No Violation of Due Process in the Virginia Proceeding

Respondent also raises a number of objections to the procedures used in the Virginia proceedings, arguing that they denied him due process. None has merit. Respondent argues that a delay of three years in initiating the bad check proceeding constitutes laches. In our jurisdiction, there is no statute of limitation on disciplinary offenses, and the passage of extensive time is only to be taken into consideration in imposing a sanction. *See* Rule XI, Section 1(c); *In Re Williams*, 513 A.2d 793 (D.C.1986). Moreover, Respondent raised his laches defense in Virginia, and it was not accepted.

Respondent next argues that the scheduling of an initial disciplinary hearing and the Virginia Board's denial of his request to have

---

2. One of the bases for avoiding imposition of reciprocal discipline is that "the misconduct elsewhere does not constitute misconduct in the District of Columbia". Rule XI, Section 11(c)(5). Although it does not alter our ultimate views on this matter, we do note that the DR 1–102(A)(3) offense in Virginia (for passing a bad check) does not exist in this jurisdiction.

In Virginia, DR 1–102(A)(3) reads as follows: A lawyer shall not ... commit a crime or other deliberately wrongful act that reflects adversely on the lawyer's fitness to practice law.

In the District of Columbia, DR 1–102(A)(3) reads:

A lawyer shall not ... engage in illegal conduct involving moral turpitude that adversely reflects on his fitness to practice law.

The rule in the District, requiring that there be illegal conduct involving moral turpitude, is much more exacting than its Virginia counterpart. No moral turpitude findings were made in Virginia, and since we must rely on the factual record there, we conclude that the Virginia DR 1–102(A)(3) offense is not misconduct in the District of Columbia.

However, since this particular misconduct was involved in the lesser of Respondent's Virginia sanctions, its absence in the District of Columbia is of no import.

the matter heard by a three-judge panel constituted a denial of due process. In particular, he asserts that the scheduling of the hearing denied him the right to have counsel of his choice represent him, without offering any evidence why the hearing date was inconvenient. None of this, in our view, rises to the level of a due process concern. More importantly, however, these initial proceedings were vacated by the Virginia Board, and new disciplinary proceedings were begun. Thus, nothing about which Respondent complains was a part of the actual disciplinary proceedings against him.

Respondent argues that Virginia Bar Counsel used an allegedly false affidavit to obtain an expedited hearing of the disciplinary charges. Respondent, however, fails to state why the affidavit was false and how it prejudiced him in any way.

Respondent next argues that at one hearing in the reinstated disciplinary proceedings, he was required to participate without counsel. Respondent admitted in that very proceeding (but failed to mention in his brief to this Board) that he had actually retained no counsel at that time.

Respondent contends that he was denied certain requested continuances, without demonstrating any prejudice therefrom. He also argues that Virginia's use of a rule allowing disciplinary cases to be brought initially before its disciplinary Board, rather than a local hearing committee, was unconstitutional and otherwise improper. The Virginia rule, however, simply permitted more important cases to be tried directly before the Board. We see nothing in the use of this procedure as to rise to the level of a due process violation.

Respondent asserts that there was a technical jurisdictional defect in the Virginia disciplinary proceedings. The argument, based on a reading of certain Virginia procedural rules, was fully litigated in Virginia and denied. It is no basis on which to fail to honor the Virginia discipline in this jurisdiction.

Respondent concludes his opposition to reciprocal discipline with a number of trivial objections to the hearing procedures used in Virginia, such as the order of proof, the consolidation of charges, and the length of the deliberations by the Virginia Board. None of these rises to the level of a due process concern.

As we noted earlier, our responsibility in reciprocal discipline matters is not to sit in appellate review of the foreign disciplinary proceedings, in order to determine whether they conformed in every respect to local procedural and substantive law. (Indeed, in this case Respondent took every appeal available to him, up to the Supreme Court of Virginia, which affirmed the actions of the Virginia Board.) Rather, our function is to determine whether any serious defects were present in the foreign proceedings—such as a lack of proof, a due process violation, or some other legal defect—such that it would be wrong to impose reciprocal discipline here. We see no such defect. All we see is an effort by a disciplined attorney to relitigate his Virginia discipline by attacking it at its procedural margins, without presenting any worthwhile evidence that he did not commit the charged misconduct or that he did not have a fair opportunity to defend himself.

### IV. *The Sanction To Be Imposed*

Finally (although Respondent has not raised this point), we examine whether the sanctions imposed in Virginia—a six-month suspension for passing a bad check, and license revocation for dishonesty and numerous instances of litigation misconduct—are appropriate. Our task in this regard is not to determine whether the District of Columbia would have imposed the same discipline as did the foreign jurisdiction, but only whether such discipline falls within the range of discipline that would be imposed here for the same misconduct. *See In Re Garner,* 476 [576] A.2d 1356 (D.C.1990).

Virginia's six-month suspension for dishonesty (passing a bad check) gives us no reason for pause. At least one decision in this jurisdiction (*In Re Waller,* 573 A.2d 780 (D.C. 1990)) involving a single act of dishonesty resulted in a 60–day suspension. A six month suspension is not outside this range.

The license revocation, however, is different. As Bar Counsel points out, license revo-

cation in Virginia appears to be the equivalent of disbarment. *See* Rules of Supreme Court of Virginia, Part 6, S IV, Para 13 C(6); Virginia State Bar Council Rules of Disciplinary Procedure, § [Rule] 1. Respondent's license revocation was premised on his misrepresentation to the trial judge concerning his retention of outside counsel, and on numerous instances of litigation misconduct in a single matter.

Bar Counsel urges identical discipline, although it acknowledges that such action would be severe, and it offers no precedent supporting its position that disbarment would be in the range of sanctions imposed here for similar misconduct. Even looking at Respondent's two Virginia disciplinary proceedings together, we believe that disbarment would be excessive. In *In Re Lenoir*, 585 A.2d 771 (D.C.1991), for example, a lawyer was suspended for 18 months for multiple offenses involving repeated dishonesty. In *In Re Thornton*, 421 A.2d 1 (D.C.1980), a lawyer was suspended for a year and a day for, among other things, serious trial misconduct. *See also In Re McGough*, D.N. 275–87 (six-month suspension plus fitness recommendation for misrepresentations to the court and abuses of legal procedure).

While we are aware of no case closely analogous to this one, in our view, an 18-month suspension, with a requirement that Respondent prove fitness as a condition to reinstatement, is the appropriate sanction. We are convinced that disbarment is too harsh, and that an 18–month suspension is not inconsistent with the disciplinary principles underlying *Lenoir* and *Thornton*. A requirement for proving fitness is also necessary: Respondent's conduct in Virginia and his conduct before its Board raise serious questions about his legal capabilities, and his prolonged refusal to recognize his misconduct gives us good reason to question his understanding of his professional ethical responsibilities.

**BOARD ON PROFESSIONAL RESPONSIBILITY**

BY: /s/ _____
        Barry E. Cohen

Dated: July 9, 1993

All members of the Board on Professional Responsibility join in this Report and Recommendation except Messrs. Fox and Carter, who did not participate.