842 A.2d 802

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Louis J. DeMAIO.

Misc. AG No. 10, Sept. Term, 2003.

Court of Appeals of Maryland.

Feb. 17, 2004.

Melvin Hirshman, Bar Counsel, Glenn M. Grossman, Deputy Bar Counsel for Atty. Grievance Com'n, for petitioner.

Louis J. DeMaio, Bel Air, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JOHN C. ELDRIDGE (retired, specially assigned), JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel filed, pursuant to Maryland Rule 16–751[1] of the Maryland Rules of Procedure, a Petition For Disciplinary Or Remedial Action, against Louis J. DeMaio, the respondent, in which it was charged that the respondent violated Rules 1.1, Competence,[2] 3.1, Meritorious Claims and

---

1. Rule 16–751 of the Maryland Rules of Procedure provides, as relevant:

    "(a) Commencement of Disciplinary or Remedial Action. Upon approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

    Upon the completion of an investigation by Bar Counsel, unless there is a recommendation pursuant to Rule 16–735 (dismissal of the complaint or termination of the proceeding without discipline), Rule 16–736 (Conditional Diversion Agreement), 16–737(reprimand) or Rules 16–771, 16–773, or 16–774 (immediate filing of a Petition for Disciplinary or Remedial Action), Rule 16–734(d) requires that Bar Counsel to "file with the Commission a Statement of Charges with an election for peer review in accordance with Rule 16–741."

    Maryland Rule 16–741 governs the filing of statements of charges. It provides:

    "(a) Filing of Statement of Charges.

    "(1) Upon completion of an investigation, Bar Counsel shall file with the Commission a Statement of Charges if Bar Counsel determines that:

    "(A) the attorney either engaged in conduct constituting professional misconduct or is incapacitated;

    "(B) the professional misconduct or the incapacity does not warrant an immediate Petition for Disciplinary or Remedial Action;

    "(C) a Conditional Diversion Agreement is either not appropriate under the circumstances or the parties were unable to agree on one; and

    "(D) a reprimand is either not appropriate under the circumstances or (i) one was offered and rejected by the attorney, or (ii) a proposed reprimand was disapproved by the Commission and Bar Counsel was directed to file a Statement of Charges."

2. Rule 1.1 requires a lawyer to "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

Contentions,[3] 3.3, Candor Toward the Tribunal,[4] 8.1, Bar Admission and Disciplinary Matters,[5] and 8.4, Misconduct,[6] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812. Bar Counsel also alleged that the respondent violated Maryland Code (1989, 1995 Replacement Volume) § 10–306 [7] of the Business and Occupation Article.

We referred the case to the Honorable Stephen M. Waldron, of the Circuit Court for Harford County, for hearing. *See* 16–757. The respondent, although served with process,

---

**3.** Rule 3.1 provides:

"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established."

**4.** Rule 3.3(a)(1) prohibits a lawyer from "mak[ing] a false statement of material fact or law to a tribunal."

**5.** Rule 8.1 provides, as relevant:

"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\*  \*  \*  \*  \*  \*

"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

**6.** Rule 8.4, as relevant, provides:

"It is professional misconduct for a lawyer to:

"(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so through the acts of another;

\*  \*  \*  \*  \*  \*

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice."

**7.** Maryland Code (1989, 1995 Replacement Volume) § 10–306 of the Business and Occupation Article provides: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

did not file an answer, prompting the entry of an order of default, and he neither appeared for, nor participated in the hearing. Following a hearing on the merits, at which testimony was elicited and exhibits considered, the hearing court made findings of fact, *see* 16–757(c),[8] and drew conclusions of law, as follows:

"Respondent Louis J. DeMaio, was admitted as a member of the Bar of the State of Maryland on July 1, 1964. In the course of his practice of law, he came to represent Thomas Oliva in a case which was filed in the Circuit Court for Hartford County, captioned *Oliva v. ITT Hartford.* Civil Case No. 12C–00–30330C. In said case, Respondent, as attorney for the Plaintiff, filed a Motion to Strike, Motion for Summary Judgment, and Motion for Hearing. Said Motion[s] [were] denied by the Circuit Court on February 27, 2001. On or about March 12, 2001, Respondent noted an appeal to the Court of Special Appeals. On October 5, 2001, the Court of Special Appeals, by Chief Judge Murphy, issued a Show Cause Order requiring Respondent's client, the Appellant, to show cause why the appeal should not be dismissed as being premature. On or about October 19, 2001, the Respondent filed a response to the aforesaid Show Cause Order, claiming falsely that the said October 5, 2001, Order was 'unsigned' by the Chief Judge. On December 13, 2001, Judge Deborah Eyler signed an Order dismissing the appeal, finding it to be a premature appeal from a non-final judgment.

"On January 7, 2002, Respondent filed a Motion to Modify or Rescind Order of Dismissal and Motion for Summary

---

8. Maryland Rule 16–757(c) provides:

"(c) Findings and Conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

Judgment in the Court of Special Appeals. In said Motion, the Respondent made several frivolous and unfounded representations, namely:

"a. 'For the Harford County Circuit Court and this panel refusal to administer Maryland law has in essence granted immunity to the Appellee which is a violation of their oath of office and exceeds the authority of the Court.'

"b. 'If the panel decides not to rescind the Order to Dismiss or refuses to modified [sic] its order or refuses to grant the Appellant's motion for Summary Judgment, this will be deemed as a denial of due process to the Appellant and a denial of due process to his attorney. For this panel to rely on void and illegal material to deny the Appellant's motion for Summary Judgment is a violation of their oath of office and it shall be necessary to have all public officials involved in this proceedings [sic] to be held accountable and responsible and, if necessary, removed from public office.'

"This Motion was denied on March 27, 2002, by Chief Judge Joseph F. Murphy, Jr. No review of that denial was requested by the Respondent.

"On or about December 19, 2002, the Respondent filed a 'Petition to Remove' in the Court of Appeals of Maryland, in which he sought, *inter alia,* to 'remove Chief Judge Joseph Murphy, Jr. forthwith from serving as Judge in any Court of law permanently.' In said Petition, the Respondent made several false representations:

"a. In paragraph 4, the Respondent alleged that 'Chief Judge Joseph Murphy, Jr. on his own initiative ... without review of the record, issued an *unsigned* Show Cause Order why the Appeal should not be dismissed and to respond by 10–22–01.'

"b. In paragraph 6, he represented that 'in essence, Chief Judge Joseph Murphy, Jr. personally interceded in this case and issued the Show Cause Order on behalf of the insurance industry, since ITT Hartford was not represented in the Court of Special Appeals. For Chief Judge Joseph

Murphy, Jr. to issue a Show Cause Order under these circumstances had to possess some ulterior motive.'

"c.   In paragraph 7, the Respondent further represented erroneously that 'it is grossly improper for Chief Judge Joseph Murphy, Jr. to unilaterally contact the insurer, who is unrepresented, without notifying the Petitioner. If this transaction involves any monetary benefit to Judge Joseph Murphy, Jr., to supplement his salary, it is reportable income. Failure to pay federal, state, and local income tax on unreported income is a criminal offense. U.S. v. Spiro Agnew.'

"d.   In paragraph 8, the Respondent refers to a potential collusion between Judge Murphy and the Clerk of the Court to remove briefs from the legal process.

"e.   In paragraph 9, the Respondent alleges that certain orders which he deemed conflicting could have come about only as a result of the 'personal intercession by Chief Judge Joseph Murphy, Jr.'

"f.   In paragraph 11, the Respondent included the following unfounded inflammatory representation: 'the egrecious [sic] administering of the law coupled with the aberrant conduct of Chief Judge Joseph Murphy, Jr. in this case warrants corrective action including removal from public office as a judge. This is not a situation of the exercise of judicial discretion but the personal involvement by a judge engaged in a scheme of unjust enrichment.'

"All of these aforesaid representations and allegations were made by the Respondent with reckless disregard as to the truth of the statements and knowing that they were false, misleading, and unfounded. The aforesaid Petition to Remove was denied by the Court of Appeals on December 30, 2002. On or about January 21, 2003, the Respondent filed a second 'Petition to Remove' in the Court of Appeals of Maryland, this time seeking, *inter alia*, the removal of Chief Clerk Leslie D. Gradet from the position of Chief Clerk of the Court of Special Appeals. In said Petition, the Respondent once again asserted that Chief Judge Joseph Murphy, Jr. had issued an *unsigned* Show Cause Order and

further intimated that Chief Judge Murphy and the Clerk of the Court had colluded to remove briefs from the record.

"As a result of this behavior, Deputy Bar Counsel for the Attorney Grievance Commission of Maryland corresponded with the Respondent, advising him that the Attorney Grievance Commission had docketed a complaint against him and requesting that he provide specific evidence supporting the allegations that he had made against Chief Judge Murphy in the aforesaid Petition to Remove. Deputy Bar Counsel requested a response by letters dated January 23, 2003, February 27, 2003, and March 13, 2003. The Respondent declined to respond to any of these letters. On March 17, 2003, an investigator for the Attorney Grievance Commission of Maryland, namely, Sterling Fletcher, contacted the Respondent by phone in order to arrange a meeting. Mr. Fletcher indicated to the Respondent that he had not responded to Bar Counsel and he suggested that he do so. The Respondent indicated to the investigator that he did not intend to respond and he further refused to meet with the investigator."

Having found the afore going facts by clear and convincing evidence, the hearing court concluded that the respondent had violated all of the charged Rules of Professional Conduct:

"By filing a premature appeal and then by making the aforesaid spurious, knowingly false, and inflammatory representations regarding Chief Judge Murphy and Chief Clerk [sic] Gradet in pleadings before the Appellate Courts, by requesting that all public officials involved in the proceeding be removed, and by filing the petitions to remove, the Respondent failed to provide competent representation to a client in violation of Rule 1.1.

"By making the aforesaid spurious, knowingly false, and inflammatory representations regarding Chief Judge Murphy and Chief Clerk [sic] Gradet, the Respondent violated Rules 3.1, 3.3. 8.2, and 8.4.

"By failing to respond to any of the letters from Bar Counsel and by failing to meet with the investigator for the

Attorney Grievance Commission of Maryland, the Respondent has violated Rule 8.1."

The petitioner took no exceptions to the findings and conclusions of the hearing court and, as we have seen, the respondent did not participate in those proceedings. The petitioner has filed Petitioner's Recommendation for Sanction, in which it urges the respondent's disbarment. Noting the hearing court's findings that the respondent made knowingly false, spurious and inflammatory representations about the Chief Judge of the Court of Special Appeals and the Clerk of that court, which it insists the record supports, and that the respondent "refused to respond to Petitioner in any substantive way, both before and after this matter was filed in this Court, despite many opportunities to do so," it concludes that the respondent's conduct is unmitigated. Thus, it asserts, "[t]he Respondent has given no reason for this Court to maintain him on the roll of those admitted to practice." The petitioner relies on *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001).

The respondent, like the petitioner, did not file exceptions to the findings of fact and conclusions of law of the hearing court; however, he filed a Response to the Petition for Recommendation for Sanction By the State of Maryland. In it, in addition to persisting in the representations as to Chief Judge Murphy and Clerk Gradet, he challenges the basis for the Commission's disbarment recommendation and characterizes the investigation leading to the filing of the Petition for Disciplinary or Remedial Action against him as "mediocre" and "incomplete and deficient." As to the former, the respondent writes:

"The Attorney Grievance Commission filed the current Petition before this Court recommending the Respondent should be disbarred for 'intentional dishonest conduct.' The Petition gives no particulars as to how, when, and where this 'intentional dishonest conduct' [occurred] other than to reference an attorney who was disbarred for admission to a crime, [Vanderlinde,] 364 Md. 376, 773 A.2d 463. For the Attorney Grievance Commission to equate criticism of the judicial process with admission to a criminal act is not only

irresponsible but borders on incompetency. The charge is unsubstantiated and false."

With respect to the investigation, the respondent maintained that, not only did the petitioner fail to consider all the facts and documents in the case underlying his allegations against Chief Judge Murphy, but it "devoted all its efforts to the Respondent messenger and ignored the message in the Respondent's petition pertaining to Chief Judge Murphy."

The respondent's response to the petitioner's recommendation for sanction contained other unfounded and reckless representations and allegations, two of which are just plain bizarre. First, he takes the Court to task for the manner in which it handled the respondent's petition for the removal of Chief Judge Murphy. After noting that the Court dismissed the petition summarily, without a hearing or requiring the affidavit from Chief Judge Murphy that the petition urged be obtained as a condition precedent to his being retained, the respondent accused:

"On April 22, 2003, some four months [after the respondent's petition was dismissed], this Court directed the Attorney Grievance Commission to investigate the Respondent for any impropriety. This Court refuse[d] to consider the merits of the Respondent's Petition but on its own initiative referred the Petition to the Grievance Commission. It is less understood why this referral was done four months after the Petition was denied. The Respondent questions the ulterior motive of this Court. It appears this is an act of reprisal for being critical of the invasive intrusion by Chief Judge Murphy in issuing the Show Cause Order. This Court is suppose[d] to be engaged in resolving issues and not creating new issues. The Order of this Court is retaliatory and punitive in nature and contrary to the administration of due process."

Next, the respondent presents the argument that "The Maryland Court of Special Appeals Is Dysfunctional and Possibly Illegal under the Maryland Constitution and a Denial of Due Process under the 14th Amendment to the U.S.

Constitution." In support of the argument, he suggests that there are multiple courts and chief judges and, possibly illegal conduct extant:

"There are actually two Maryland Court of Special Appeals, one in Annapolis and the other in Towson Maryland. There appears to be two Chief Judges, Chief Judge Murphy and ex-Chief Judge Murphy.[9] The Show Cause Order only states Chief Judge and does not specify which Chief Judge. If the Order is from ex Chief Judge, then it is clearly illegal. Anyone can use a rubber stamp stating Chief Judge. This perhaps explains why a signed Order was never furnished to the Respondent.

"The Grievance Commission did not produce the rubber stamp, copy of the Show Cause OrderExhibit—1. It appears th[at] the Court of Special Appeals has one court docket in Annapolis and no court docket in Towson Maryland. This bifurcated Court of Special Appeals does not properly service parties on appeal but only accommodates the Chief Judge in some ex parte manner especially when the case files are physically located in Annapolis, Maryland.

"If the ex-Chief Judge issued the Show Cause Order, this is an illegal order under the Maryland Constitution, Article IV, section 5a regarding mandatory retirement, states an appellate court judge fall within the 'elected to public office' and shall retire when he retains his seventieth birthday. There are no exceptions for appellate court judges. Retired appellate judges cannot engage in the judicial process after age 70. The Grievance Commission chose to ignore and failed to explore this important issue.

"If the ex-Chief Judge is officially retired and receives office space in Towson with free clerical and office supply and equipment, this is an economic fringe benefit and is taxable for income tax purposes for both federal and state

---

**9.** The only former Chief Judge Murphy of which this Court is aware is Robert C. Murphy, former Chief Judge of this Court. The respondent did not appear to know that Chief Judge Robert Murphy was deceased, which was confirmed when he was asked that question directly during the hearing.

income taxes. The amount included in the income tax return is the fair yearly rental of comparable office with similar services. Failure to report this benefit is fraud in which the statute of limitation does not toll. If not disclosed and not reported as income, the taxpayer is liable for back taxes, interest and penalties.

"The Respondent has raised a proper issue in the validity of the Show Cause Order and deviated from the Maryland Rule, of Review, denied a copy of the signed order by the Chief Judge and the Chief Clerk that commence from a bifurcated Court of Special Appeals that retains no court docket, by an unknown, unsigned and unidentifiable Chief Judge that has priority over submitted briefs that denied the Respondent's client, Thomas Oliva, the right of review after the payment of the required filing fee and cost of briefs."

The final argument advanced by the respondent is that it is a denial of due process under the 14th Amendment of the United States Constitution not to have an electronic filing system in the Circuit Courts and in the Court of Special Appeals. He suggests in that argument that the absence of such a mandatory system is the ultimate reason that this case became necessary: had there been electronic filing, his client would have been granted the summary judgment for which he had moved, thus, presumably, obviating the need for appeal and, thus, the involvement of the Court of Special Appeals, not to mention its Chief Judge or Clerk.

Members of the legal profession have a responsibility to refrain from engaging in conduct prejudicial to the administration of justice. See *Attorney Grievance Comm'n v. Gilbert,* 356 Md. 249, 257, 739 A.2d 1, 2 (1999); *Attorney Grievance Comm'n v. Richardson,* 350 Md. 354, 368–69, 712 A.2d 525, 532 (1998) *Attorney Grievance Comm'n v. Alison,* 317 Md. 523, 538–39, 565 A.2d 660, 667 (1989). As to that, we have recognized that the courts have the power and duty to consider particular conduct of one who is an officer of the court, in relation to the privileges and duties of a public calling

that specially invites complete trust and confidence. *Rheb v. Bar Ass'n of Baltimore City*, 186 Md. 200, 204, 46 A.2d 289, 291 (1946).

Conduct similar to that involved in the case sub judice has resulted in disbarment. *In re Evans*, 801 F.2d 703 (4th Cir.1986). In that case, a lawyer whose case had been dismissed on recommendation of the Magistrate Judge, wrote to that Magistrate Judge charging him with incompetence and/or racial bias, i.e.,

> "I feel that your Report was either the result of your incompetence in the matter or perhaps worse and reflected a Jewish bias in favor of the Kaplan firm whose actions were in my judgment inexcusable in this cause. If in fact it represents incompetence I will drop the matter but if it is a Jewish bias, I will file a complaint under the Rules for Handling Complaints of Judicial Misconduct or Disability. Before I take such action I afford you an opportunity of setting forth your reasons for you [sic] prejudiced and incomplete Report."

*Id.* at 704. The Magistrate Judge instituted disciplinary proceedings, which resulted in the district court's disciplinary committee writing to the attorney, informing him of the allegations made against him and advising him that it would await the disposition of the attorney's pending appeal to consider the disciplinary matter. This prompted multiple correspondence from the attorney, in which he repeated his allegations.[10] *Id.* at 704–05. These repeated unfounded alle-

---

**10.** On one occasion, the attorney wrote:

> "In respect of the opportunity you have offered to set forth in writing any explanation I care to make, I stand on the record in the above case as well as the record in the proceedings in the Fourth Circuit Judicial Council, copies of which are enclosed.
> "I repeat my charge that Magistrate Smalkin was either incompetent or biased and I note he has failed to deny either charge. I desire an opportunity to call the Magistrate and examine him under oath if a hearing is held in this matter. I do not personally know him and if there is to be a hearing I desire ample notice so that I might investigate his background and read opinions authored by him."

gations, held the District Court, warranted the attorney's disbarment, reasoning:

> "The repeated assertions by Mr. Evans, even after the dispositive approving opinion of the Fourth Circuit Court of Appeals in the very matters which Mr. Evans contends were erroneously decided by the Magistrate, and his continued and unrelenting groundless assertions that the Magistrate acted out of bias, rather than in compliance with well-established rules of law, make it apparent that Mr. Evans acted originally, and continues to act, in a way that is prejudicial to the administration of justice ... in a way which is undignified and discourteous and degrading to a tribunal in which he appeared in his professional capacity ... and that he has made accusations against a judge or other adjudicatory officer which he know or should have known were false. . . . In view of the circumstances outlined here, the undersigned member of this Court is of the view that the respondent lacks the necessary mental and character qualifications to continue to practice law in this Court."

*Id.* at 705–06. On appeal, the Fourth Circuit Court of Appeals affirmed. It rejected the argument that the accusations were protected speech under the First Amendment, noting

> "Evans' letter, accusing Magistrate Smalkin of incompetence and/or religious and racial bias, was unquestionably undignified, discourteous, and degrading. Moreover, it was written while the *Brown* case was on appeal to this Court and was thus properly viewed by the district court as an attempt to prejudice the administration of justice in the course of the litigation.

---

*In re Evans,* 801 F.2d 703, 704–05 (4th Cir.1986). Subsequently, he added:

> "I find the decision of the Disciplinary Committee to defer any action in this matter until after the appeal has been resolved is incredible. I repeat my claim that Magistrate Smalkin either was grossly incompetent or biased in favor of the Jewish firm that represented the defendants Rogers in *Brown v. Rogers,* C.A. No. JH–80–855 and against me and my client Brown, or both. I now repeat such charge and will continue to hold such belief and forthrightly make such claim notwithstanding the outcome of any appeal."

"In addition, Evans' accusation, which he repeated throughout the proceedings below and has continued to repeat on appeal, was based solely on the magistrate's single decision against appellant's client in the *Brown* case—a decision which this Court ultimately affirmed. We note that Evans never took any action against the Kaplan firm, which he viewed as having acted without Brown's authorization. More significantly, Evans never made any attempt to investigate the magistrate's actions in other proceedings or otherwise establish a reasoned basis for the charges of incompetence or bias. Appellant's failure to substantiate charges as grave as the ones leveled here certainly constitute the making of accusations which he know or reasonably should have known to be false.

"Finally, appellant's failure to investigate, coupled with his unrelenting reassertion of the charges even after this Court's affirmance in *Brown*, convincingly demonstrates his lack of integrity and fitness to practice law. A person guilty of such practices is, as at least one court has commented: dangerous in any walk of life and is especially so when he occupies the responsible position of an attorney upon whose good faith, truthfulness, sense of propriety and ethical standards both courts and litigants are entitled to rely."

*Id.* at 706 quoting *In the Matter of Greenfield*, 24 A.D.2d 651, 652, 262 N.Y.S.2d 349, 351 (N.Y.App.Div.1965). Further, the court observed:

"Judicial officers ... are not immune from suit or criticism; but, like every one else, they are protected against scandalous charges. To make a public, false and malicious attack on a judicial officer is more than an offense against him individually; it is an offense against the dignity and integrity of the courts and of our judicial system. It may bring discredit upon the administration of justice amongst citizens who have no way of determining the truth of the charges. It tends to impair the respect and authority of the court."

*Id.* at 707 (quoting *Greenfield*, 24 A.D.2d at 652, 262 N.Y.S.2d at 350–51, in turn quoting *Matter of Bevans*, 225 A.D. 427, 431, 233 N.Y.S. 439, 443 (N.Y.App.Div.1929) (citations omitted)).

See also *In re Grimes,* 364 F.2d 654, 656 (10th Cir.1966), *cert. denied,* 385 U.S. 1035, 87 S.Ct. 775, 17 L.Ed.2d 682 (1967). *In re Daniel Friedland,* 275 Ind. 214, 416 N.E.2d 433 (1981).

The record in this case supports the findings that the respondent made, and recklessly so, false, spurious and inflammatory representations and allegations with respect to Chief Judge Murphy and Clerk Gradet. His propensity to make such representations and allegations, and his persistence in doing so in the absence of any basis or investigation, even when it was called to his attention, and inquiry as to the basis was made specifically, was demonstrated graphically and at length during the hearing. And it has been further confirmed by the respondent's submission in response to the petitioner's recommendation for sanction. That response raises other questions with respect to the respondent's fitness to continue in the practice of law. In addition to the representation concerning this Court's motive in referring the case to the petitioner, as we have indicated, the allegations with respect to the existence of two intermediate appellate courts and two chief judges and electronic filing are quite bizarre. More than that, however, they suggest, at the least, that the respondent does not have any, certainly not a complete appreciation, of how the appellate process works and, at the worst, that he lacks the necessary mental and character qualifications to continue in the practice law.

We agree with the petitioner that the appropriate sanction is disbarment. Making accusations in petitions to this Court seeking their removal, impugning the integrity of the Chief Judge of the Court of Special Appeals and the Clerk of that court, without justification or even an attempt at justification beyond conjecture and speculation, and repeating those accusations during the disciplinary hearing, again without an attempt at justification, are themselves, as they would be with respect to any judge or clerk, cause for disbarment. It certainly is conduct that prejudices the administration of justice seriously and most directly.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST LOUIS J. DEMAIO.