In re Louis J. DE MAIO, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 04–BG–244.

District of Columbia Court of Appeals.

Submitted Feb. 10, 2006.

Decided March 2, 2006.

Before SCHWELB and FISHER, Associate Judges, and PRYOR, Senior Judge.

FISHER, Associate Judge:

In this reciprocal discipline proceeding against respondent Louis J. De Maio, the Board on Professional Responsibility ("Board") has recommended that respondent be suspended from the practice of law in the District of Columbia for eighteen months and required to demonstrate fitness prior to reinstatement. Although Bar Counsel initially urged that respondent receive the identical reciprocal discipline of disbarment, the Board recommended otherwise, and Bar Counsel has informed us that he takes no exception to the report and recommendation of the Board.[1] Respondent opposed the Board's

1. "Our disciplinary system is adversarial—Bar Counsel prosecutes and Respondent's attorney defends—and although the court is not precluded from imposing a more severe sanction than that proposed by the prosecuting authority, that is and surely should be the exception, not the norm, in a jurisdiction, like ours, in which Bar Counsel conscientiously and vigorously enforces the Rules of Profes-

report and recommendation, and has filed many motions in this court, but he has not filed a brief. We adopt the Board's recommendation.

## I.

The Maryland Court of Appeals disbarred respondent in 2004 after finding that in various court filings, he had made "false, spurious and inflammatory representations and allegations" against Chief Judge Joseph Murphy of the Maryland Court of Special Appeals and the Clerk of that Court. These statements and allegations began after Chief Judge Murphy issued an order to show cause why an appeal that respondent was handling should not be dismissed as premature. Respondent falsely claimed that the show cause order had not been signed by Chief Judge Murphy. Respondent then filed motions in which he took progressively more outlandish positions, contending that the Maryland courts had "refus[ed] to administer the law" and that their actions were "a violation of their oath of office" and demanding that all public officials involved in his case be "held accountable and responsible and, if necessary, removed from their public office." Respondent then filed a petition to remove Chief Judge Murphy from the court, making unfounded allegations that the judge was personally interceding in respondent's case on behalf of the insurance industry, that he had personally contacted the insurer without notifying respondent, and that Chief Judge Murphy and the Clerk of the Court were colluding to derail his action and remove respondent's briefs from case files. In subsequent filings, respondent made additional bizarre allegations, including that there were actually two different Maryland Courts of Special Appeals and two different Chief Judge Murphys—one being a retired former Chief Judge—and that the show cause order that spurred respondent's allegations was illegal because it did not say which Chief Judge Murphy had signed it.

After an investigation was completed and findings were submitted by Maryland's Bar Counsel, the Maryland Court of Appeals concluded that respondent's conduct violated Maryland Rules of Professional Conduct 1.1 (Competence), 3.1 (Meritorious Claims and Contentions), 3.3 (Candor Toward Tribunal), 8.2 (Judicial and Legal Officials), and 8.4 (Misconduct), as well as Rule 8.1 (for failure to cooperate in the Bar Counsel investigation). Maryland Bar Counsel recommended and the Maryland Court of Appeals ordered that respondent be disbarred. *Attorney Grievance Comm'n of Md. v. DeMaio*, 379 Md. 571, 842 A.2d 802 (2004).

## II.

Based on the findings and conclusions of the Maryland Court of Appeals, the Board has recommended that, rather than disbarment, respondent receive a suspension of eighteen months with a requirement that he show fitness prior to reinstatement. Generally, we are required to "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record . . . ." D.C. Bar R. XI, § 9(g). However, the Board's final determinations, whether they are characterized as findings of ultimate fact or conclusions of law, are owed no deference; our review is *de novo*. *See In re Fair*, 780 A.2d 1106, 1110–11 (D.C.2001) ("we have the obligation to make our own determination on the issue"). This case, however, presents a reciprocal matter where another disciplinary court has made a final determination as to the respondent's conduct.

sional Conduct." *In re Cleaver–Bascombe,* 892 A.2d 396, 412 n. 14 (D.C.2006).

In reciprocal discipline matters, D.C. Bar R. XI, § 11(f)(2) provides that identical discipline will be imposed unless the attorney demonstrates, or the court finds on the face of the record, by clear and convincing evidence, one of the five exceptions set forth in D.C. Bar R. XI, § 11(c). *See also In re Goldsborough*, 654 A.2d 1285, 1287 (D.C.1995) (citing *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992)).

Any of § 11(c)'s exceptions, if established by clear and convincing evidence, will overcome the rebuttable presumption of identical reciprocal discipline:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the Court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

*Id.* The rule continues, "unless there is a finding by the Board under (1), (2), or (5) above that is accepted by the Court, a final determination by a disciplining court outside the District of Columbia or by another court in the District of Columbia that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this court." *Id.*

██ Here, the Board has not made a finding under subsection (1), (2), or (5).[2] Thus, we must treat respondent's misconduct as conclusively established by the decision of the Maryland Court of Appeals. *See In re Gallagher*, 886 A.2d 64, 68–69 (D.C.2005) (explaining that we defer to findings of fact made by other courts in reciprocal proceedings); D.C. Bar R. XI, § 11(c). Therefore we cannot and do not consider respondent's various attacks which fault the Board for not reinvestigating the disciplinary matter in Maryland. Nor do we deliberate on respondent's request that we order the Board to "investigate the ex parte proceeding" by Chief Judge Murphy or the "false charges" by the Maryland Attorney Grievance Commission. As we have previously stated in a similar matter: "Respondent's disagreements with the Maryland court's findings of fact cannot be entertained by this court.... Put simply, reciprocal discipline proceedings are not a forum to reargue the foreign discipline." *Gallagher*, 886 A.2d at 69 (quotation marks and citation omitted).

Relying on subsection (4), the Board does, however, recommend different discipline. We are left then to consider three issues: whether the Board has supported its determination that there was clear and convincing evidence to overcome the presumption in favor of identical reciprocal discipline; whether the Board's recommended sanction of suspension for eighteen months is consistent with our case law; and whether the Board's recommendation of imposing a fitness requirement was proper.

---

2. Respondent certainly had notice and ample opportunity to be heard during the investigation of his misconduct before the Maryland Circuit Court, but he did not participate. *DeMaio*, 842 A.2d at 803 ("The respondent, although served with process, did not file an answer, prompting the entry of an order of default, and he neither appeared for, nor participated in the hearing.").

## III.

■ The Board found clear and convincing evidence that the sanction of disbarment is "substantially different discipline" from the identical conduct by respondent would warrant in this jurisdiction. D.C. Bar R. XI, § 11(c)(4). To decide whether it is appropriate to apply the "substantially different discipline" exception, we must undertake a two-step inquiry: "First, we determine if the misconduct in question would not have resulted in the same punishment here as it did in the disciplining jurisdiction.... Second, where the discipline imposed in this jurisdiction would be different from that of the disciplining court, we must then determine whether the difference is substantial." *In re Garner*, 576 A.2d 1356, 1357 (D.C.1990) (citations omitted).

■ Reviewing the case law of this jurisdiction, we agree with the Board that there are no decisions precisely on point. Closely analogous is *In re Evans*, 533 A.2d 243 (D.C.1987) (per curiam) (*Evans II*), a reciprocal discipline case where the respondent had been initially disbarred by the United States District Court for the District of Maryland for writing a letter accusing a magistrate judge of incompetence and/or a "Jewish bias" in favor of a particular law firm. That order of disbarment was affirmed on appeal by the United States Court of Appeals for the Fourth Circuit. *See In re Evans*, 801 F.2d 703 (4th Cir.1986) (*Evans I*). In *Evans*, we declined to order the identical reciprocal discipline of disbarment, explaining "that in this jurisdiction the traditional method of dealing with contumacious behavior in the courtroom or in the course of a judicial proceeding is to cite the offender for contempt of court." 533 A.2d at 245. Instead, we censured the respondent for

his misconduct. *Evans* provides support for the Board's conclusion that our jurisdiction handles disciplinary actions arising from an attorney's personal attacks on a judge or court officer differently from our sister jurisdiction of Maryland.

Unlike Maryland, this jurisdiction has not adopted Model Rule of Professional Conduct 8.2, which provides in relevant part:

Rule 8.2. Judicial and Legal Officials.

(a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.[3]

This rule or a variation thereof would clearly cover the conduct of the respondent here. (Indeed, the Maryland court found that he had violated Rule 8.2.) The absence of such a provision in our Rules of Professional Conduct seems to evince more tolerance for comments such as those made by the respondent here, which certainly demonstrate (at least) "reckless disregard as to [their] truth or falsity." When this court was considering whether to adopt the Model Rules of Professional Conduct, the Board of Governors of the District of Columbia Bar recommended that Rule 8.2 be deleted in its entirety. It explained (in the so-called "Jordan Report") that much of Rule 8.2(a) was "viewed as unnecessary, since proposed Rule 8.4(c) would prohibit conduct by a lawyer involving dishonesty, fraud, deceit or misrepresentation." Jordan Report at 243.

The ban on misrepresentation would include any knowing falsehoods embodied in statements about potential appointees

---

**3.** Maryland Rule of Professional Conduct 8.2.

to public legal or adjudicatory positions. To the extend that the "reckless disregard" language is intended to encompass conduct which would not constitute misrepresentation under proposed Rule 8.4 the Committee was concerned about the possible chilling effect of such a broader rule upon candid comments regarding potential appointees.

*Id.*

Let us be clear. We condemn respondent's conduct and agree with the Board that he at a minimum violated Rules 1.1, 3.1, and 8.4(d) of our Rules of Professional Conduct. However, the fact that our jurisdiction has not adopted Rule 8.2's prohibition against such statements made with "reckless disregard" as to their truth or falsity[4] is additional evidence of a substantial difference between the treatment of respondent's conduct by Maryland and the District of Columbia.

This substantial difference is further demonstrated by comparing Maryland's imposition of discipline in this case with previous disciplinary actions in this jurisdiction for repeated, intentionally false statements to courts. While there have been instances where an attorney was disbarred for, among other things, making knowingly false statements to a court, those false statements were in each case only a small segment of the attorney's misconduct. *See In re Corizzi*, 803 A.2d 438 (D.C.2002) (attorney disbarred after findings that he instructed clients to commit perjury, failed to advise a client of two separate multi-thousand dollar settlement offers until after he had rejected them, and made false statements to opposing counsel and to the court regarding the date of his representation of a client); *In*

*re Goffe*, 641 A.2d 458 (D.C.1994) (attorney disbarred after findings that he offered an altered check to the Internal Revenue Service, lied under oath in tax court, submitted forged contracts to the trial court in a separate civil proceeding, and fabricated notarizations of documents filed with the recorder of deeds).

We find the facts of this case much more similar to the line of cases in which attorneys have received between one-and two-year suspensions for, among other misconduct, making intentionally false statements. *See In re Lenoir*, 585 A.2d 771 (D.C.1991) (eighteen-month suspension where attorney signed another attorney's name to a brief submitted to court, neglected client accounts, and misled a client about the status of her case); *In re Alexander*, 496 A.2d 244 (D.C.1985) (two-year suspension of attorney for pattern of failure to seek client's lawful objectives and directing a member of his office staff to sign the name of opposing counsel to form for continuance); *In re Sheehy*, 454 A.2d 1360 (D.C.1983) (two-year suspension of attorney for neglect of client's legal matter, misrepresentations to his client, and intentionally misstating facts of case in a letter to bar counsel).

We also agree with the Board that we can derive helpful guidance from *In re Morrissey*, 648 A.2d 185 (D.C.1994), another reciprocal discipline case. In *Morrissey*, an attorney was disbarred in a neighboring jurisdiction for his conduct relating to a civil judgment rendered against him. After invoking his right to a trial *de novo*, the attorney engaged in "unprofessional, perhaps even bizarre, conduct" by arguing that the Virginia Circuit Court had no jurisdiction over him because of improper

---

4. In reviewing the Maryland Court of Appeals' decision, the Board found some ambiguity as to whether the court was disciplining respondent because his statements about Chief Judge Murphy and the Clerk of Court were "knowingly" false or because respondent had made those statements with "reckless disregard" as to their truth or falsity.

service of process, by seeking a continuance because his retained counsel could not be present (despite the fact that he had not retained counsel), and by serving and filing unsigned motions for a mistrial and dismissal while offering no legal or factual support for those motions. *Id.* at 187.

After finding that the attorney's actions were "dishonest and in total disregard of even the most rudimentary sense of propriety in the Courts," the Virginia Disciplinary Board revoked his license to practice law. The Virginia Supreme Court affirmed that discipline. *Id.* at 188. In reciprocal disciplinary proceedings, we concluded that disbarment, which would have been the functional equivalent of revoking the attorney's license, was too harsh. *Id.* at 186. Instead, we found that the attorney's conduct was comparable to the conduct in *Lenoir* and that an eighteen-month suspension, with a requirement that the attorney prove fitness as a condition of reinstatement, was the appropriate sanction. *Id.*

■ For the reasons discussed, we agree with the Board that had respondent's misconduct occurred in this jurisdiction, it would not have resulted in the same punishment as it did in the disciplining jurisdiction. *Garner,* 576 A.2d at 1357. We also find the second portion of the test satisfied because it is self-evident that there is a substantial difference between a one-to two-year suspension and disbarment. Thus, D.C. Bar R. XI, § 11(c)(4) has been satisfied. We also find reasonable, and accept, the Board's conclusion that an eighteen-month suspension is appropriate.

■ Finally, we recently clarified the legal standard for imposing a fitness requirement. In *In re Cater,* 887 A.2d 1 (D.C.2005), we held that in order for us to require proof of fitness as a condition of

reinstatement after suspension, "the record in the disciplinary proceeding must contain clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law." *Id.* at 6. Based on respondent's bizarre and erratic behavior before the Maryland courts, as well as the content of his various filings in this court, there is ample reason to have serious doubt about respondent's fitness to practice law.

Therefore, we order that the respondent be suspended from the practice of law in the District of Columbia for eighteen months and that in the event that respondent seeks reinstatement in this jurisdiction, he be required to prove his fitness to practice law. For purposes of calculating dates, the eighteen-month suspension will begin when respondent files an affidavit that complies with D.C. Bar R. XI, § 14(g).

*So ordered.*

SCHWELB, Associate Judge, concurring:

I agree with the court's disposition of this matter and I join Judge Fisher's opinion. I write separately, however, to make it clear that, in principle, I find nothing unreasonable or unfair in the decision of the Maryland Court of Appeals to disbar De Maio. Indeed, if this were a case of first impression, I would probably vote for disbarment. In my opinion, conduct of the kind reflected in this record, when engaged in by a member of our "noble calling," *In re Shillaire,* 549 A.2d 336, 337 (D.C.1988), is not only "bizarre and erratic," *ante* at 589, but also dishonorable, disgraceful, and intolerable. It is evident to me, as it was to the Court of Appeals of Maryland, that lawyers who engage in such conduct should not be permitted to practice law.

Because we have conditioned De Maio's reinstatement on proof of fitness, however, I am confident that he will never be permitted to practice law in the District of Columbia in the absence of a very persuasive showing that conduct such as that described in the court's opinion will not recur. With that safeguard in place, and with Bar Counsel now in apparent agreement with a unanimous recommendation of the Board on Professional Responsibility, I am reasonably comfortable in joining the imposition of a sanction short of disbarment; under the adversarial system, we should not routinely impose more severe discipline than the prosecuting authority has proposed. *See In re Cleaver-Bascombe*, 892 A.2d 396, 412 n. 14 (D.C.2006), *quoted ante* note 1, p. 584–85. Moreover, as Judge Fisher has amply demonstrated, *ante* at 586–87, the precedents in the District of Columbia in this kind of case are more lenient than those in some other jurisdictions,[5] in substantial part because, unlike, *inter alia,* Maryland, we have not adopted Rule 8.2 of the Model Rules of Professional Conduct. Given the "strong presumption in favor of [the] imposition [of the Board's recommended sanction], *In re Hallmark*, 831 A.2d 366, 371 (D.C.2003)," the Board's unanimity, and the lack of an objection by Bar Counsel, I join my colleagues in imposing the discipline proposed by the Board.

Finally, because the court relied in part on *Evans II*, I believe that a comment on that decision is in order. The court stated in *Evans II* that

in this jurisdiction the traditional method of dealing with contumacious behavior in the courtroom or in the course of a

judicial proceeding is to cite the offender for contempt of court.

533 A.2d at 245. In this case, however, we cannot cite De Maio for criminal contempt, for the conduct in question occurred in Maryland, not in the District.[6] In my opinion, notwithstanding the modest sanction imposed in *Evans II*, an eighteen-month suspension, with reinstatement conditioned on proof of fitness, is most assuredly not too severe for the grave misconduct that resulted in De Maio's disbarment in Maryland.

---

**5.** *Compare In re Evans*, 533 A.2d 243, 245 (D.C.1987) (*Evans II*) (per curiam) (public censure imposed in reciprocal discipline case where respondent accused magistrate judge of incompetence or "Jewish bias") *with In re Evans*, 801 F.2d 703, 705–08 (4th Cir.1986)

(*Evans I*) (upholding disbarment for the same conduct).

**6.** Paradoxically, this was also true in *Evans II*.